NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1876-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

SPRINGFIELD URBAN
RENEWAL CENTER CORP.,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 19, 2026**
>
> **APPELLATE DIVISION**

Argued April 30, 2026 – Decided May 19, 2026

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6292.

Richard D. Trenk argued the cause for appellant Township of Springfield (Trenk Isabel Siddiqi & Shahdanian, PC, attorneys; Richard D. Trenk, of counsel and on the briefs; Juliana C. Canevascini, on the briefs).

Olivia R. Meadows argued the cause for respondent (Hill Wallack, LLP, attorneys; Eric I. Abraham, of counsel and on the brief; Hana Jeong Pak, on the brief).

The opinion of the court was delivered by

MAWLA, P.J.A.D.

Plaintiff the Township of Springfield appeals from a February 12, 2025 order entered by the Law Division, reducing a fine issued by a municipal court to defendant Springfield Urban Renewal Center Corporation following its conviction for violating a township ordinance pursuant to N.J.S.A. 40:49-5. Defendant does not contest its guilt. Rather, the issue in this appeal is whether the Township could impose a fine of $250 per day for the ongoing violation of the ordinance, which totaled well over the $2,000 limit set forth in N.J.S.A. 40:49-5. We hold N.J.S.A. 40:49-5 limits the amount of a singular fine but does not prevent a defendant from incurring per day fines that cumulatively exceed $2,000. For these reasons, we reverse and remand for resentencing consistent with this opinion.

Defendant owns commercial property in Springfield, which has undergone construction pursuant to a 2015 redevelopment agreement to build apartments, parking, and retail spaces. On July 17, 2018, the Township adopted Springfield, N.J., Ordinance 2018-12 (July 17, 2018), regarding safety fencing around construction sites. Enforcement of the ordinance went into effect on August 20, 2018. The ordinance reads as follows:

> It shall be the responsibility of the [c]ontractor working a [c]onstruction/[r]enovation [s]ite or the [o]wner of a [c]onstruction/[r]enovation [s]ite to secure the [c]onstruction/[r]enovation [s]ite with a

lockable fence to protect the health and safety of the public.  The Township [e]ngineer or the [c]onstruction [o]fficial, in the reasonable exercise of their discretion, shall determine the type of fence as to material, height, type, fence locking mechanism, and the type of machinery that requires fencing and the size of the hole, cavity[,] or mound that requires fencing so as to protect the health and safety of the public.  The fence shall be installed prior to the [c]ommencement of [w]ork and shall remain and be maintained on the [c]onstruction/[r]enovation [s]ite until there is no longer a hole, cavity[,] or mound, until there is no machinery or until a structure is closed, whichever is later.  For subdivisions and new single-family construction, it shall be the responsibility of the [c]ontractor/[o]wner to install a fence around the entire perimeter of the construction area.  Fencing is to remain closed/locked/secured when no personnel are at the construction site or no construction activities are taking place.

[Springfield, N.J., Ordinance 2018-12-1.9(e)(2)(a) (July 17, 2018).]

The penalty provision of Ordinance 12-1.9(e)(5)(a)(1) (amended March 3, 2020) reads as follows:

The contractor and owner shall be provided with oral and written notice of the violation(s), which shall include a deadline to correct the violation(s).  If the violation(s) are not cured by the prescribed deadline, a summons shall be issued for $250 per day for every day the violation remains uncured.

On January 15, 2020, the Township sent defendant a letter advising the fencing installed around the site did not comply with the ordinance.  Between March and April 2020, the parties arrived at a solution for the fencing.

3

On November 22, 2021, a zoning official sent a letter to defendant stating the fencing was failing and needed to be replaced to comply with the ordinance. The letter noted the zoning official had the authority to determine the type of fencing required under Ordinance 12-1.9(6)(b). Defendant had ten days to replace the wooden fence with a fabric-lined chain-link fence and safety signage, or the zoning official would issue a summons. On December 3, 2021, a summons was issued, citing defendant for failing to comply.

The municipal court conducted an eight-day trial, admitted several documents into evidence, and heard testimony from the Township engineer, the Township zoning officer, and defendant's representative. The zoning officer testified regarding photographs he took of the fence on December 19, 2022. He explained the violation remained uncured from the date he issued the summons.

The municipal court found the Township had proven defendant guilty of violating Ordinance 12-l.9(e)(2)(a) beyond a reasonable doubt. The violation lasted 690 days from the date of the summons until the court rendered its decision on October 30, 2023. Pursuant to Ordinance 12-1.9(e)(5)(a)(1)'s $250 per day fine, defendant's fine totaled $172,500.

However, the court considered a June 15, 2023 consent order that was issued in a separate matter between the parties and decided to count only those

A-1876-24

daily violations between the date of the summons and the date of the consent order, which reduced the fine to $135,000. The court then halved the fine to $67,500 and added court costs, for a total final judgment of $67,533.

Defendant appealed from the municipal court's judgment. On June 24, 2024, the Law Division judge stayed the matter and remanded it "solely for the purpose of resentencing as to the amount of fines to be assessed" considering Township of Deptford v. Malachite Group, Ltd., No. A-0943-22 (App. Div. June 20, 2024) (slip op. at 10). Deptford struck down an ordinance's penalty provision for treating each day of violation as a separate offense, concluding the municipality could not issue a penalty greater than $2,000 pursuant to N.J.S.A. 40:49-5. Id. at 8, 10.

The municipal court found Deptford was "limited to the facts of that case," which were not analogous to the circumstances of this matter. The municipal court reaffirmed its prior decision and entered a judgment accordingly on November 26, 2024.

The Law Division judge conducted a de novo review. Like the municipal court, he found defendant violated Ordinance 12-1.9(e)(2)(a) but reached a different conclusion regarding the assessment of the fines defendant owed.

The judge found "the 'every day' fine provision in . . . Township Ordinance 12-l.9(e)(2)(a) improper pursuant to N.J.S.A. 40:49-5." He reasoned the statute permitted the Township to impose an "additional fine" for "a repeated violation of any municipal ordinance," but it "may not exceed the statutory maximum of $2,000." The judge found "that imposing an 'each day' fine[,] as opposed to an 'each offense' fine, effectively allows the municipality to exceed the allowable statutory maximum directed by N.J.S.A. 40:49-5." Although the judge concurred with the municipal court's finding of guilt, he was not persuaded by the zoning official's testimony about the per day violations. He found "walking to work [and by defendant's fence] between 2021 and 2023, [did not] amount[] to an inspection."

The judge found the ordinance's fine provision "akin to the enforcement penalty" struck down in Perrine Terrace Land Co. v. Brennan, 101 N.J.L. 487 (Sup. Ct. 1925). Although Perrine was an old decision, the judge observed it was never overturned and was therefore valid law. The judge also cited Township of Pennsauken v. Schad, 160 N.J. 156 (1999), which upheld per day municipal fines for repeated violations of a sign ordinance that totaled more than $65,800. He found Schad was inapplicable because it addressed a First Amendment claim and the question of whether the fines constituted cruel and unusual punishment, which were not issues here. Unlike Schad, the issue here

6

was whether the court was "bound by a legislative statute that does not authorize an 'each day' enforcement of municipal ordinance fines." The judge found he was bound by N.J.S.A. 40:49-5.

The judge's conclusion did not sit easy with him. He was "indeed troubled that [his] interpretation of N.J.S.A. 40:49-5 could have a chilling effect on a municipality's ability to enforce ordinances." The judge observed:

> [m]unicipalities must have the ability to dissuade the public from engaging in continuous improper activity. Simply put, a code enforcement official must be allowed to take the steps necessary to provide for a safe and law-abiding community. This [c]ourt also recognizes the impracticality of that official issuing a new summons potentially every day for repeated improper behavior.

Regardless, the judge concluded he was constrained by the statute's plain language because doing otherwise would "condone how the fines herein were assessed, i.e.[;] . . . the code enforcement officer 'drove by' the site every day and saw the continuing violation." The judge likened this

> to a situation where a person [is] habitually in violation of a local noise ordinance by having loud parties. That person is then issued a summons for a party on a specific evening, but during the trial[,] testimony is taken that indicates that there ha[d] been a party every Saturday for the next six months. Surely, in this example, the [j]udge could not fine that person for [twenty-six] subsequent parties. All that is before the [c]ourt is the one party on that one particular evening. To say otherwise would give

7

unintended discretion to assess penalties for transgressions not before the [c]ourt.

The judge found defendant guilty of violating the ordinance, but liable for a fine of only $2,000 plus court costs.

The Township raises the following arguments on appeal:

POINT I. THE LAW DIVISION ERRED WHEN IT REDUCED AND LIMITED THE FINE TO $2,000 DESPITE FINDINGS OF A CONTINUING VIOLATION.

A. The Supreme Court Holding in Schad Permitting "Per Day" Fines Governs.

B. Under the Holding of [Perrine] . . . , Fining Defendant for 404 days is Permissible.

C. The Fine Imposed on Defendant is Permissible under N.J.S.A. 40:49-5.

D. The Court Should Assess a Penalty of $250 per Day for 697 Days Totaling $174,250.

I.

When a defendant appeals from a municipal court conviction, the Law Division judge reviews the matter de novo on the record. R. 3:23-8(a)(2). The Law Division judge must make independent "findings of fact and conclusions of law but defers to the municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017).

8

Our review of a de novo conviction in the Law Division following a municipal court appeal is typically "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). Unlike the Law Division, we do not independently assess the evidence. Id. at 471-72. The "standard of review of a de novo verdict after a municipal court trial is to 'determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering the proofs as a whole." State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). The rule of deference is more compelling where the municipal court and the Law Division judge made concurrent findings. Locurto, 157 N.J. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid.

However, our review of a trial court's legal determination is plenary. See State v. Kuropchak, 221 N.J. 368, 383 (2015). De novo review also applies to questions of statutory interpretation. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).

"[We] utilize[] the established rules of statutory construction to interpret a municipal ordinance." Paff v. Byrnes, 385 N.J. Super. 574, 579 (App. Div. 2006) (citing Schad, 160 N.J. at 170). When we interpret a municipal

ordinance or a statute, we strive to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Schad, 160 N.J. at 170 (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)).

Initially, we examine the language of the ordinance or statute. Paff, 385 N.J. Super. at 579. If the language has a clear and unambiguous meaning, it controls. Ibid. "Alternatively, if the language is amenable to multiple interpretations, then [we] 'consider[] extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the [L]egislature's intent.'" Ibid. (quoting Schad, 160 N.J. at 170).

At the outset, we decline to employ an "exceedingly narrow" scope of review of the Law Division judge's findings because his findings were not concurrent with the municipal court's findings, which were rendered following several days of trial and its assessment of credibility by observing live witnesses. To this end, and given defendant's guilt is not contested, we reject the Law Division judge's finding the zoning official's observance of defendant's property was insufficient to establish the per day violation of the ordinance.

We also part ways with the Law Division judge's reliance on Deptford because it is not binding. R. 1:36-3. Pursuant to Deptford, the judge found the holding in Perrine was still good law and used it to distinguish Schad. We do

10

not view Perrine and Schad as mutually exclusive. Perrine was decided by what was then called the New Jersey Supreme Court, which was not our highest court. At the time, the highest court was the Court of Errors and Appeals.[1] Arguably, therefore, Perrine is not binding upon us.

More important are the factual distinctions between Perrine and Schad, which make Schad better law. Perrine had idiosyncratic procedural deficiencies. It involved an ordinance prohibiting the construction of an appendage to a building to project beyond the street. 101 N.J.L. at 488. The ordinance imposed a $200 fine "for each offense, and each day any such violation shall be continued shall be deemed and taken to be a separate and distinct offense." Id. at 490. Rather than impose the $200 fine, the Perrine trial court found the plaintiff liable to "pay a fine of [ten dollars] for each offense, and each day any such violation shall be deemed and taken to be a separate and distinct offense." Id. at 488.

On appeal, the Perrine court found the trial court's judgment "radically defective" because the ten dollar per offense fine and the finding "that each day of such violation shall be deemed and taken to be a separate and distinct offense" rendered the judgment "uncertain and speculative." Id. at 491. The

---

[1] New Jersey Constitutional Convention, Constitutional Convention of 1947, vol, 4: Committee on the Judiciary 555 (Trenton, N.J.: The Convention, 1949-53, 1949), https://www.nj.gov/state/archives/catcourtstructure.html.

court noted plaintiff was charged with "a single offense," yet the trial court, "without any complaint, and without any proof of or hearing on the commission of any other violations of the ordinance by the [plaintiff], . . . undertook to pronounce a judgment upon the [plaintiff], which would embrace past, present, and future violations." Ibid. (emphasis added). The judgment was problematic because it "assume[d] . . . there was a separate and distinct violation of the ordinance each day from the time [the] appendage . . . exist[ed] . . . up to the time of the hearing before the [trial court] and the rendering of judgment, and that such offense would continue in futuro." Ibid.

The Perrine court concluded the ordinance did not permit such an absurd result. Rather, "each day that the appendage is permitted to remain shall be a separate and distinct offense, for which distinct offense there shall be a penalty of $200. To enforce this provision, a complaint is required of each distinct violation." Id. at 491-92.

Schad involved an ordinance prohibiting interior store displays that were visible from the exterior of the building. 160 N.J. at 166. The municipal court fined the defendant $30,000 based on a $500 per day fine for thirty days of violations from the date the complaint was issued until "the first date of a pretrial event." Id. at 184. Following the initial conviction, the defendant was issued new summonses and a second trial followed by a conviction resulting in

12                                                                    A-1876-24

an additional fine of $102,000 for seventy-five days of continuous violations. Ibid. The Law Division reduced the total fines to $65,800, representing forty-seven days of violations at $1,400 per day. Ibid.

Our Supreme Court observed that "[a] penalty is presumed valid, and '[u]nless a "substantial showing" is . . . made a reviewing court must respect the Legislature's will.'" Id. at 184 (second alteration in original) (quoting State in Int. of L.M., 229 N.J. Super. 88, 100 (App. Div. 1988)). It concluded: "Although the amount of the fine for violation of the sign ordinance is large, it is not unconstitutionally excessive. It is reasonable for the Township to authorize the imposition of fines for each day [the] defendant continued to violate the ordinance." Ibid.

Again, read together, and setting aside whether Perrine is binding law, it is clear Perrine turned on the procedural deficiency of the lack of proof, let alone a hearing, to support the trial court's findings and the daily fines it imposed. Schad clearly endorses the fact daily fines for ongoing violations after issuance of a summons is permissible to gain a violator's compliance with the law. For these reasons, Ordinance 12-1.9(e)(5)(a)(1)'s imposition of fines for each day a violation remains uncured is permissible as a matter of law.

N.J.S.A. 40:49-5 pertains to penalties for violations of municipal ordinances and, in relevant part, states a "governing body may prescribe

penalties for the violation of ordinances it may have authority to pass, by . . . a fine not exceeding $2,000." It also states, the "governing body may prescribe that for the violation of any particular ordinance at least a minimum penalty shall be imposed which shall consist of a fine which may be fixed at an amount not exceeding $100." Ibid.

Ordinance 12-1.9(e)(5)(a)(1) does not violate N.J.S.A. 40:49-5 because the $250 fine imposed for a violation in the ordinance is less than the $2,000 maximum fine in the statute. The plain language of N.J.S.A. 40:49-5 speaks of a "fine," singular, not exceeding $2,000. It contains no limiting language, let alone a prohibition on the ability to impose the same fine for an ongoing violation. Not only does Schad permit the imposition of a daily fine for an uncured ordinance violation, prohibiting a daily fine would gut a municipality's ability to coerce compliance from a violator. Indeed, following the Law Division's logic here would permit defendant to ignore the violation, knowing its exposure upon conviction would never exceed $2,000. All the while the public would be exposed to the danger of defendant not properly securing its construction site. We do not believe our Legislature intended such

a result and, as a matter of public policy, we decline to read N.J.S.A. 40:49-5 this way.[2]

Finally, we reject the Township's argument the penalty imposed by the municipal court should be increased to $174,250. The municipal court initially imposed a fine of $172,500, representing the $250 per day fine multiplied by 690 days. It then reduced the sum to $135,000, representing the number of days in violation between the summons issuance and the June 15, 2023 consent order. The municipal court then halved the sum to $67,500 plus court costs, for a total of $67,533, "to give credit to . . . defendant because . . . there was a reasonable belief [the parties] were working colla[borative]ly to work out the problem."

N.J.S.A. 40:49-5 embodies the discretion accorded to our municipal courts in sentencing. We have observed that "[o]ur courts have consistently held that N.J.S.A. 40:49-5[] prohibits municipalities from enacting minimum fines which would deprive judges of their statutory discretion to impose 'any fine.'" State v. McCormack Terminal, Inc., 191 N.J. Super. 48, 51 (App. Div. 1983).

---

[2] It is not dispositive to the outcome of this appeal, but we note recent attempts to introduce legislation in both chambers consonant with our interpretation of N.J.S.A. 40:49-5. See A. 3962 (2026)/S. 3687 (2024)/A. 5266 (2025).

Sentencing courts "have wide discretion in arriving at a just sentence and . . . their exercise of discretion will not be second-guessed." State v. Blackmon, 202 N.J. 283, 306 (2010). They have an inherent "duty to impose a just and fair sentence, bounded by the applicable statutes and Court Rules, and to do so with sensitivity to the way in which the proceedings are conducted in order to ensure that the proceedings themselves bear the hallmarks of fairness." Ibid. The municipal court's sentence was supported by the facts and evidence presented and was fair.

Although we have rejected the Township's request to impose a sentence much greater than that imposed by the municipal court, the court did miscalculate the number of days between December 3, 2021 and October 30, 2023, as 690 days rather than 696 days.[3] Therefore, using the municipal court's methodology, the $135,000 amount is increased by $1,500 representing the additional days of violations. The sum of $136,500 is then halved and added to the court costs, yielding a final judgment amount of $68,283, which we direct the court to enter upon remand.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

---

[3] The number of days is 696, not 697 as the Township contends in its brief.